# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MONICA GUILLOT**                           **CIVIL ACTION**

**VERSUS**                               **NO. 11-394-BAJ-DLD**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have fourteen (14) days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 20, 2012.

**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MONICA GUILLOT**

**VERSUS**

**MICHAEL J. ASTRUE,
COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION**

**CIVIL ACTION**

**NO. 11-394-BAJ-DLD**

## MAGISTRATE JUDGE'S REPORT

Plaintiff seeks judicial review of a final decision of the Commissioner denying her claim for disability insurance benefits.

*Background*

Plaintiff protectively filed her application for DIB on April 23, 2009, alleging disability beginning on April 23, 2009,[1] and her earnings record reflects that her last insured date is through June 30, 2009. The claim was denied initially on July 2, 2009, and after filing a timely request for hearing, an administrative hearing was held via video conference on March 18, 2010, which resulted in an unfavorable decision on May 27, 2010. Plaintiff's request for appellate review was denied, making the ALJ's decision the final decision of the Commissioner.

In making that final decision, the Commissioner reached the fifth and final step of the five-step sequential disability analysis set forth in 20 C.F.R. § 404.1520(b)-(f).[2] The

---

[1] Defendant's brief mistakenly dates the application for benefits as May 5, 2009, with a disability onset date of May 1. (rec.doc. 13) However, the administrative transcript reflect that the April 23, 2009, date is the correct date.(TR 112)

[2] *See, e.g.*, *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

Commissioner determined that the forty-four year old claimant had severe impairments consisting of fibromyalgia, diabetes, hypertension, and back and neck pain, and that these impairments prevented her from performing her past relevant work as a nurse. The Commissioner further determined, however, that the claimant nonetheless had the residual functional capacity to perform the full range of light work. The ALJ also found that while the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the RFC assessment. Applying Rule 202.21 of the medical-vocational guidelines, the Commissioner determined that claimant therefore was not disabled within the meaning of the Social Security Act.

### *Statement of Errors on Appeal*

Plaintiff raises three issues in this appeal:

1) The ALJ improperly rejected and/or failed to properly weigh the opinion of her treating neurosurgeon;

2) The ALJ failed to comply with SSR 96-8 in that the ALJ failed to conduct a function-by-function analysis and failed to provide a narrative discussion that supports his RFC finding; and

3) The ALJ failed to comply with SSR 96-7p when he evaluated the plaintiff's credibility, and the evaluation relied on misstatements of the relevant evidence.

### *Governing Law*

The Social Security Act provides for the payment of benefits to persons who have contributed to the program and "who suffer from a physical or mental disability." *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000), *citing* 42 U.S.C. § 423(a)(1)(D)(1991). As used in the Act, the term "disability" is defined as the inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period not less than twelve months. *Id.*, citing 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1987).

To determine whether a disability exists for purposes of the Act, the Commissioner must weigh the following elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

In reviewing the Commissioner's decision to deny benefits, the Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards. *E.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision. *Id.* Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Id.* A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. *Id.*

The overall burden of proving disability under the Social Security Act rests on the claimant. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). If a claimant proves that she no longer is able to work in her prior job, then the burden shifts to the Commissioner to show that there is some other type of substantial gainful activity that the claimant can perform. *Id.* Thus, in cases such as this one where the Commissioner determines that the claimant cannot perform her past relevant work and accordingly reaches the fifth step of the five-step disability sequential analysis, the Commissioner bears the burden of establishing that there is other work in the economy that the claimant can perform. *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). If the Commissioner adequately points to potential alternative employment, the ultimate burden of persuasion then returns to the claimant to prove her inability to perform those jobs. *Id.*; *Kraemer v. Sullivan*, 885 F.2d 206 (5th Cir. 1989).

## *Discussion*

The issue before this court is whether the Commissioner's finding that plaintiff is not disabled is supported by the substantial evidence and was reached by applying the proper legal standards. 42 U.S.C. § 405(g). The court will address each of plaintiff's statements of error in turn:

## *Issue 1 - Treating Physicians*

Plaintiff argues that Dr. Dennis, plaintiff's neurosurgeon, examined her on August 31, 2009, and completed a Medical Source Document ("MSD") regarding plaintiff's physical capacity, and opined that she had the following functional limitations: occasionally lift up to 10 pounds; stand/walk less than 2 hours in an 8-hour day; restricted ability to bend, twist, push, and pull; pain or other symptoms would frequently interfere with her attention and

concentration; and would be absent from work more than 3 times per month as a result of her impairments. Dr. Dennis also opined that plaintiff's prognosis for marked improvement, complete recovery, and ability to return to work was poor. (rec.doc. 8, TR 283)

Plaintiff contends that the ALJ's improper rejection of Dr. Dennis' opinion was based on the ALJ's erroneous assertion that there was no medical evidence to substantiate these limitations be placed on the claimant, and as Dr. Dennis' opinion is "well-supported by medical evidence," it is entitled to controlling weight. (rec.doc. 8) In support of Dr. Dennis' opinion, plaintiff points to her MRI results, and the results of repeated examinations from October, 2008, through August, 2009. Plaintiff states that the ALJ's rejection of Dr. Dennis' opinions was based on "cursory and selective discussion of the medical evidence, and that the ALJ rejected Dr. Dennis' opinions in favor of Dr. Ruiz's non-examining medical opinion which, plaintiff argues, merits reversal under *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). Id. Plaintiff also argues that even if Dr. Dennis' opinions were not entitled to controlling weight, SSR 96-2p states that his opinions would be entitled to the greatest weight and adopted, even it if does not meet the test for controlling weight, and in this case, the ALJ failed to give any weight to Dr. Dennis' opinion, and he therefore committed legal error.

In response, the Commissioner argues that the ALJ was not required to give Dr. Dennis' June 5, 2009, opinion that plaintiff should continue her "100% disability status" any special significance because it included issues reserved for the Commissioner; that is, Dr. Dennis' opinion that plaintiff is disabled or unable to work is not a medical opinion and therefore is not entitled to controlling weight. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) The Commissioner points out that at this same visit, Dr. Dennis found that plaintiff

had normal gait and coordination, along with good motor strength, which contradicts Dr. Dennis' opinion of plaintiff's "100% disability status." (rec.doc. 13, TR 242)

With regard the MSD, the Commissioner asserts that this opinion is inconsistent with Dr. Dennis' own treatment notes. For example, in February, April, and June, 2009, Dr. Dennis opined that plaintiff had normal gait and coordination and good motor strength, and in the August 31, 2009, visit which generated the MSD, plaintiff's examination revealed normal gait and coordination, good motor strength and intact sensation. (Id., TR 318) The Commissioner points out that Dr. Dennis reported "no abnormal clinical findings at the same time he described plaintiff as extremely limited in her functional capacity." (Id.)

The Commissioner also contends that Dr. Dennis' opinions are contradicted by the medical records of plaintiff's primary care physician, Dr. Falgoust, who examined plaintiff on April14, 2009, and June 8, 2009, and noted that plaintiff could perform activities of daily living such as computer games, gardening and landscaping, home crafts, reading, traveling, and listening to music. (TR 22, 218, 236) Further, the Commissioner cites to those records and notes that plaintiff did not complain of leg or back pain at either visit. (rec.doc. 13)

Moreover, with regard to plaintiff's contention that the ALJ favored Dr. Ruiz's opinions over that of plaintiff's treating neurosurgeon, the Commissioner asserts that Dr. Ruiz found that plaintiff was capable of performing light work, and under *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981), a non-examining physician's opinion may be accepted even over the opinion of a treating physician if supported by the objective record. As support for the non-examining physician's opinion and in contradiction to Dr. Dennis' opinion, and in addition to the activities of daily living as recorded by Dr. Falgoust,

the function report completed by plaintiff on June 9, 2009, indicated that she visited with friends and family once or twice a week; went to friends' houses or church once or twice a week on her own; fed and watered pets; cooked or prepared meals; drove a car; shopped 1 to 2 times a week in stores for whatever she needed; and enjoyed reading all the time. (TR 125-132)

The governing law in the Fifth Circuit is that the opinions, diagnoses, and medical evidence of treating physicians who are familiar with a plaintiff's condition should be accorded considerable weight in determining disability. *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). An ALJ may give less weight to a treating physician's opinion only when there is good cause shown to the contrary. *Id.* Good cause includes instances where the physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or otherwise unsupported by the record. *Hospital Service District No. 1 Of The Parish Of LaFourche v. Thompson*, 2004 WL 192047, *3 (E.D. La. Aug. 25, 2004). Also, the general rule is that a treating physician's opinion on the nature and severity of a claimant's impairments will be given " controlling weight" only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence. *Newton*, at 455 (5th Cir. 2000). If the treating physician's opinion is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic tests or otherwise unsupported by the evidence, the ALJ has good cause for discounting the treating physician's opinion in favor of other experts, not giving the opinion considerable weight. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001), *Newton*, 209 F.3d at 456 (*citing Brown v. Apfel*, 192 F.3d 492,500 (5th Cir. 1999). The regulations and circuit law are clear that while it is within the ALJ's discretion to assign greater or lesser

weight to the medical evidence, it is not within his discretion to reject the opinion of a treating physician without a detailed analysis[3] of the treating physician's view; however, that detailed analysis is only required in the absence of competing first-hand medical evidence. *Newton*, at 456- 458; 1920 C.F.R. § 404.1527(d)(2), SSR 96-2p. See also, *Reynolds v. Astrue*, 2010 WL 583918, at *7 (N.D. Miss. 2010).

Here, the ALJ discussed at length the competing first-hand medical evidence, which included not only Dr. Dennis' own notes and Dr. Falgoust's notes, but also the records from the Spine Diagnostic and Pain Treatment Center, Baton Rouge General Medical Center, Ochsner Clinic Foundation, and plaintiff's own testimony. For example, during her January 9, 2009, visit to the Spine Diagnostic and Pain Treatment Center, plaintiff reported "significant relief of pain the lower back and right leg" following an epidural steroid injection, and although left leg continued to "bother her with pain, tingling and numbness," Zanaflex and Topamax were "helping her pain and allow her to sleep better at night." (TR 21, 161) During a February 10, 2009, visit to Baton Rouge General Medical Center, plaintiff seemed "to be doing well on pain medication." (TR 21, TR 194) An MRI performed on December 8, 2008, "revealed multilevel cervical spondylosis with broad based left paracentral C5-6 disk herniation and mild degree" of cervical cord contact unassociated with spinal cord compressions. (TR 21, 279). During a September 24, 2009, visit to Oschner Clinic, plaintiff's fibromyalgia was improved, her generalized osteoarthritis was stable, and she was doing well following surgery for hernia repair. (TR 21, 288-289) The ALJ noted the inconsistencies between Dr. Dennis' opinions and the competing first-hand medical

---

[3]Detailed analysis" refers to the six factors set forth in § 404.1527(e) and explicitly applies only to medical opinions, not disability opinions, as those opinions are reserved for the Commissioner. See *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

evidence in his decision; thus, the court is unpersuaded by plaintiff's arguments that the ALJ did not assign the proper weight to Dr. Dennis's opinions or that a detailed analysis for the rejection of Dr. Dennis' opinions was required in this circumstance. The ALJ amply supported his decision to assign little weight to Dr. Dennis' opinions.

***Issues 2 The RFC Assessment***

With regard to the RFC assessment, plaintiff contends that the ALJ failed to properly evaluate her RFC because he failed to perform a function-by-function analysis as required by SSR 96-8p; in particular, that the ALJ's decision is devoid of any discussion of plaintiff's ability to walk, stand, sit, push, pull, lift or carry. Plaintiff asserts that the ALJ's decision lacks a narrative discussion pointing to evidence that supported his conclusions as to her exertional abilities, and that the ALJ "simply assigned an exertional level (light)," which prejudiced plaintiff.

With regard to the ALJ's RFC finding in his determination, SSR 96-8p explains that the RFC assessment is a "function-by-function" assessment, and the ALJ bases his RFC on all of the relevant evidence in the case record. Here, in addition to the medical evidence, the ALJ also considered plaintiff's testimony, which he found credible only to the extent it was consistent with the RFC finding. The court notes that plaintiff relies primarily on her own subjective complaints of pain to support her allegations of disability. The law of the Fifth Circuit law is that pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). "Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. It is within the ALJ's discretion to determine whether pain is disabling, and the ALJ's determination is entitled to considerable

deference." *Id.* (Internal citations omitted.) Plaintiff's subjective complaints of pain must be corroborated by objective medical evidence. *Id.* Thus, while an ALJ must consider plaintiff's subjective complaints of pain, the ALJ is allowed to examine the objective medical evidence to test the claimant's credibility. *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985). Also, the ALJ is not required to give subjective complaints precedence over the objective medical evidence. *Carry v. Heckler*, 750 F. 2d 479, 485 (5th Cir. 1985). To the contrary, plaintiff's subjective complaints may be discounted by an ALJ if they are inconsistent with other evidence in the record. *Dunbar v. Barnhart*, 330 F.3d, 670, 672 (5th Cir. 2003). See also, Social Security Ruling ("SSR") 96-7 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. The adjudicator must consider such factors as: [t]he degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.") Thus, an ALJ " may find, from the medical evidence, that an applicant's complaints of pain are not to be credited or are exaggerated." *Johnson, supra*, 767 F.2d at 182. Based upon an ALJ's evaluation of all[4] of the evidence, including his assessment of the credibility of the claimant, he may conclude that the claimant's pain is not of such severity as to prevent all substantial gainful activity. *Id.*

Here, the record shows that the ALJ accepted plaintiff's contention that she suffered from some pain, as evidenced by the RFC for light work. Furthermore, the record shows

---

[4]Accord, SSR 96-7p: " In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the record ."

that the ALJ articulated valid reasons under SSR 96-7p for discounting plaintiff's credibility, such as the inconsistency between her subjective complaints versus her daily activities. As examples of the inconsistency between plaintiff's subjective complaints and the medical evidence, the ALJ noted that the medical evidence revealed that plaintiff's gait and coordination were normal, her back pain improved with medication, and plaintiff testified at the hearing that she drove for 30-40 minutes at a time for her appointments at Ochsner's. The ALJ also noted that Dr. Falgoust's records indicated that plaintiff was capable of performing activities of daily living. (TR 24) Thus, the ALJ provided a narrative discussion consistent with SSR 96-8p, and substantial evidence supports the ALJ's finding with regard to the RFC for light work.

*Issue 3 - Flawed Credibility Analysis*

Plaintiff asserts that the ALJ mischaracterized Dr. Falgoust's records pertaining to plaintiff's capacity to perform activities of daily living, stating that this information is just information in the computer that repopulates at each visit and is not indicative of plaintiff's capacity at each visit. Other than making this conclusory statement, plaintiff has not set forth any evidence in support of the contention that Dr. Falgoust's chart "reflects information collected at some unknown point in the past." (rec.doc. 8) Further, while plaintiff asserts that her testimony is consistent with Dr. Dennis' limitations, the court notes that Dr. Dennis appears to have based his limitations on plaintiff's testimony and not the medical evidence or his own treatment notes. With regard to plaintiff's contention that the ALJ misrepresented the evidence when he asserted that her pain complaints lack credibility because she does not take prescription or narcotic pain medication, this is not what the record reflects. The record reflects, and as stated previously, that the ALJ considered more than just plaintiff's use of over-the-counter medications. He noted that the plaintiff testified

-11-

that she uses over-the-counter medication and hot/cold packs to control her pain because she fears addiction; however, if the pain truly were debilitating pain, "it appears she would require treatment more effective than that available over-the-counter." (TR 25) The court further notes that at the hearing, plaintiff testified she chooses not to use medications, not that she was unable to use medications. (TR 49) In *Parfait v. Bowen*, 803 F.2d 810, 813-814 (5th Cir. 1986), the Fifth Circuit determined that a claimant who receives conservative pain treatment substantially supports an ALJ's adverse credibility finding regarding debilitating and severe pain. Therefore, there is sufficient evidence to support the ALJ's credibility determination regarding plaintiff's complaints, and the ALJ adequately explained his reasons for rejecting plaintiff's subjective complaints. *Falco*, 27 F.3d at 164.

The ALJ's determination was supported by substantial evidence and was reached using the correct legal standards; therefore, the determination will not be disturbed.

## CONCLUSION

Accordingly, it is the recommendation of the magistrate judge that the decision of the Commission denying benefits be **AFFIRMED**, and the plaintiff's complaint be **DISMISSED** with prejudice.

Signed in Baton Rouge, Louisiana, on July 20, 2012.

**MAGISTRATE JUDGE DOCIA L. DALBY**